The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Joel Jamal Rougeau, appeal number 181729. Mr. Schnipper, if you could please introduce yourself on the record. Good morning, Chief Justice, Chief Judge Howard and members of the panel, I'm Merrick Schnipper here on behalf of the appellant, Joel Rougeau. Good morning, counsel, and good morning to everyone. Just before we begin, Judge Thompson and I would like to welcome Judge Helpe who is sitting with us today and thank you for lending your talents to this proceeding, Judge Helpe. And Attorney Schnipper, you may begin when you are ready. Thank you, Judge Howard, I'll begin. Again, I'm Merrick Schnipper on behalf of the appellant, Joel Rougeau. We're here on a sentencing appeal and we contend that the sentencing judge committed two significant procedural errors in this case. The first by failing to adequately address and explain the sentencing implications of the severe and permanent trauma Mr. Rougeau suffered as a result of his torture and forced servitude in Mexico. And the second by basing her sentence, at least in part, on an erroneous finding the defendant recruited his girlfriend, Lily Solis, into the crime and thereby endangered her life and the life of their young son. Now these errors we contend justify resentencing in their own right. Mr. Schnipper, it's unclear to me how you make the assertion that Judge Serras didn't take what happened in Mexico into consideration. She specifically addressed it, she didn't give it the weight that you think it deserved. She thought it cut both ways, given his conduct, even if forced. So it's just hard to understand why you think she didn't consider it. Sure, well, I appreciate the opportunity to draw the distinction that I'm making between what I feel she did consider, which is both his decision to flee there, the physical experiences he endured in the torture, and then the work he did under duress with the cartel afterwards. She did address all those and she found that cut both ways. But what we don't contend she adequately addressed and grounded her sentence in is the psychological traumatization that resulted from all those actions, which, unlike the physical acts that went on, really didn't cut both ways, really only reflected a serious and permanent diminishment of the person who stood before the court and, of course, represented a very, very significant transformation of that person from the date on which he committed his crime until the date he stood before the court for sentencing. So it's our contention that in a case with such truly unusual and directly relevant to sentencing facts, that Section 3553 really requires a clearer and more fully explicated rationale for the sentencing decision, rather than, as I think the judge's comments at sentencing suggest, placing the burden on Mr. Rougeau to move the court off the government's sentencing recommendation, which was the low end of the guideline sentence that she did end up imposing. So it's our contention that a fuller explanation of exactly how, given the fact that this was, I think there was really undisputed evidence this person was transformed radically in a severely diminished manner for the man he had been on the day he was arrested for this crime, given that the magnitude of the personal transformation in a negative, largely, direction, why 11 years and three months in prison still, the judge felt, was necessary in order to punish him and to punish the conduct at issue. I mean, the conduct at issue obviously is not largely changed by the suffering he endured after it occurred, but certainly with regard to specific deterrence rationale, I think there's hardly a specific deterrence rationale left in this case after you see what Mr. Rougeau went through and the way he was personally harmed by it. With regard even to the general deterrence rationale, I think there's some general deterrence relevance of the fact that people who engage with criminal syndicates of this sort are likely to find themselves in Mr. Rougeau's place enduring the type of suffering that he endured. So I do feel, I certainly acknowledge case law as a general matter that looks at the facts that the judge discusses, the facts that the judge does not discuss, the arguments the party makes, and then sort of deduces from all those things the judge's rationale. But our position is that the requirements of an explained sentence really comes into the fullest force in cases that are so far outside the mainstream of sentencing jurisprudence. And I really think this case is practically sui generis in the nature of the transformation that Mr. Rougeau underwent between the day of his crime and the day of his sentencing. So that's really what we feel that Judge Sarris did discuss the facts of what happened to him, but did not really fully address in her sentencing rationale the trauma that he endured. It was really, I mean, you know, while the sourcing of it and even perhaps the extent of it was somewhat open to dispute, there was no real dispute that this was a traumatized man and a traumatized man as directly as a result of the associations he had engaged in as a result of his criminal activities. So that's our position on that. With regard to the fact-finding about his girlfriend and the recruitment, our primary objection there is really a procedural one. This is certainly well outside the mind-run of facts that you see in a sentencing case where any counsel would know I'm going to have to discuss my client's criminal history, my client's, you know, life background. I mean, this is something that really, I think, runs counter to the PSR that the judge said she accepted in the sense that the PSR refers to Mr. Rougeau and Ms. Solis both as working for the Martinez Tejada drug trafficking organization as couriers, right, really puts them in the same category. The judge says she accepts that, but then she says to Mr. Rougeau, you know, you weren't a mere courier. You brought someone else into this. You engaged in her life and the life of your child. Mr. Rougeau had to get notice that that was the sort of fact that was going to be considered in the context of sentencing so that he could adequately address it. He really never gets that chance because the judge brings it up for the very first time after he's allocated, after the parties have made their arguments. I thought the government brought it up at the change of plea hearing. I don't recall that. Certainly, it didn't argue that he was responsible for Ms. Solis' participation in the offense. Certainly, he is the driver. I think the one fair fact that can be used to support that inference is that there was evidence that he had participated in prior runs with this organization. I thought the government made a comment to the effect that this wasn't her operation. It was clear it wasn't her operation. Even in its sentencing memorandum, the government took the position that he was in the nature of an organizer. Am I mistaken about that? I'm going strictly to the question of notice. You say he didn't have notice. I think it's questionable whether he's in the nature of an organizer, meaning that he's the person who certainly had a longer-term engagement with this drug project. There's nothing in the record to suggest why she came along other than to act as a translator. The point is referring strictly to whether he was on notice. You say this was sprung on him by the judge at sentencing. I'm suggesting two places where it might be said that he was on notice that this could be an issue. That's all I'm asking you to respond to. If the court deems that sufficient notice, then I would acknowledge that he had. Because the PSR does not acknowledge that fact or does not treat that fact as recognized and, in fact, refers to them both in similar capacities, at the time that he actually appeared for sentencing, I think Mr. Rougeau was entitled to consider the facts accepted by the court and the PSR as those that were going to govern his sentencing. So let me ask, in your reply brief, you cite the case of U.S. versus Rondon Garcia from 2018 from the circuit. Yes. And you use that in support of your argument for adequate notice. But that was a case where the district judge relied on ex parte information provided by the probation officer. Here, it would seem that Judge Saris relied on information and the pre-sentence report, reasonable inferences from the report. How do you distinguish the Rondon Garcia case that you cite? Or do you think it applies? Well, I think that it certainly is factually distinguishable, as Your Honor raises. However, when Judge Saris uses, discusses this recruitment finding, she talks largely about Ms. Solis' appearance, physical appearance and behavior at her own sentencing, which I would certainly argue is to some extent ex parte here because certainly Mr. Rougeau did not participate, nor did his counsel participate in that separate sentencing hearing that Ms. Solis had. He talked about her being terrified and, you know, at her wits end, not knowing what was facing her. Of course, I would argue that Mr. Rougeau exhibited a similar terror at his own sentencing. But I don't think that simply the fact that the government referred to him as an organizer, which there wasn't any finding in the PSR to that effect, gets us to the notice position. I think Rondon Garcia is certainly distinguishable in the facts Your Honor represents. But still, the notice requirement was certainly on display here. And obviously, you know, there's also a preponderance finding that needs to be made with regard to this recruitment standard. And I don't think the little bits of excerpted wiretap phone calls the government points to can support that finding, certainly not without an opportunity to get tested before the sentencing judge. Mr. Schnipper, thank you for that fine argument. If the court has additional questions, now would be the time. If not, we will hear from Mr. Krom. I have one additional quick question. Judge, the matter, your first argument that Judge Saris had to consider the torture that would occur in Mexico. And right now, you're arguing your client has PTSD and other issues. Wouldn't this be more of an issue for, not for sentencing right now, but for compassionate release and a further proceeding before Judge Saris, where the BOP can determine, or Judge Saris, whether this person could actually be in the Bureau of Prisons? Because the compassionate release statute arguably may allow a further motion to be filed. And district judges see those motions filed in almost every case nowadays. I think that's an excellent idea and certainly an alternative avenue to see Mr. Rougeau released from prison earlier. I don't think it addresses the underlying issue of how such unusual facts should be addressed during a sentencing proceeding, however, Your Honor. Thank you. Thank you. Thank you. Attorney Schnipper, if you could please mute your audio and video at this time. And Attorney Krom, if you could please unmute and introduce yourself on the record. May it please the court, Randall Krom on behalf of the government. Whenever you're ready, Mr. Krom. Thank you, Your Honor. If I could begin with a question of notice, as this court has noted, this was raised in the Rule 11 hearing, the basic difference of responsibility between Rougeau and Solis. The government does believe it's very clear in the PSR that that issue is constantly being addressed, pointing out that she is serving as an interpreter for him, that the play in the conversations are exclusively her relaying information from him to Martina Cejada and information back. And certainly a reasonable inference from that information that she is playing a role subsidiary to his. And as Chief Judge Howard has noted, we even raised the point that there could be a role enhancement on that basis, although it wasn't pressed by the government. So certainly at the level of notice, the defendant knew that we distinguished their roles in that way. But the more important point, the one we argue in our brief, is that this, to some extent, is misleading, suggests that the court relied on a sort of a formal sense of recruitment that she had, that he had brought her into crime as sort of in a formal sense, recruited her into criminal activity because the court's statements does use the word recruit, but also says brought her into this, brought her into this coming across the country, suggesting that the court's real concern was that he exposed her to danger and therefore couldn't really claim that he was simply, you know, he was the bottom of the heap. He was a courier who had done nothing to engage anyone else, but that he had, in fact, played such a role. And that's different than a formal finding, for example, that somebody has recruited somebody and therefore is an organizer or leader. That's not what the court relied on or found. And therefore, I don't think there's an error of the kind that's being identified here in failing to justify that kind of formal finding. On the question that was raised first, which is goes to the justification for the sentence and the treatment of the trauma, I think one point, and again, we make this in our brief, but I'll just reiterate it briefly, is as defense argues, this does go to the question perhaps of specific deterrence, but specific deterrence is only one of several considerations. The judge was clearly struck by the seriousness of the crime, the amount of fentanyl, seriousness of fentanyl as a problem. Issues going to sort of general deterrence, which we think was adequate to support the sentence. As the court has made clear, the court needs to only identify the principal factors and doesn't need to specify everything it's considering. And with respect to the trauma, the court clearly believed it in part, clearly believed that in some sense it was outweighed by other information. And the court was clearly swayed to a degree that by the fact that this was incidental to something that the defendant had voluntarily done, fleeing from law enforcement in the hopes of perhaps getting in with the very group that was threatening him or that he believed had stolen the drugs, and the fact that it resulted in harm to him was in some sense a risk that he had taken on and perhaps didn't serve as a mitigating factor. So the court's recitation of what it did rely on and choice not to say more about this doesn't reflect that it didn't consider it, didn't even believe it to a degree, but simply that it didn't weigh it in the way that the defendant wanted it to. Did the government argue below that this never happened to him, what he says happened in Mexico? The government cross-examined the witness, the doctor who had interviewed him at some length because the government was skeptical. And as the record shows, the government elicited that there was inconsistencies between what he told the therapist or the defense-hired expert and what the government knew from other sources. It said information about his prior involvement that wasn't the same, and he said other things that made them skeptical that his story was entirely credible. So he indicated that they shot him in two different places. I mean, wouldn't that have been something that a medical examination would have been able to determine if that was true? Yes, and one of the things that the government pointed out in cross-examining the witness at the sentencing hearing was that, for example, there was a lot of stuff about dental injuries, but no dental records were provided and medical records, information that could have verified some of this wasn't made available. And that was, again, the defendant's burden to show if he could support it by specific medical information, and that wasn't done. So the court was left essentially with the statements of the defendant as reiterated through the therapist that he told, and without any corroboration, it might have made it easier to know how much of it was true. But couldn't probation have corroborated some of this? Possibly they could have. I don't know. The PSR indicates that the records weren't made available to it, so that's not to say that, you know... But he was in custody. That's why it was confusing to me. Since he was within the government's custody, they had the ability to ascertain that information. I agree that there's some of that that seems like they might have been able to discover that's something that could have been raised, I suppose, in an objection to the PSR, that there was information the government should know. In any event, it didn't come before the district court, so the district court wasn't in a position to assess its truthfulness. But in the end, the court had, you know, again, I think the key part is the court didn't disregard it, the court believed it to be true to the extent it had information that could support and corroborate it, and there isn't a showing that that assessment is erroneous and that the court didn't consider it, you know, thoughtfully, in fact, over the course of two hearings in arriving at the sentence, which I think is all the court needed to do. If the court doesn't have further questions, we rely on our brief remainder and ask the court to affirm. One minute. Let me just give my colleagues a chance if they want to ask questions. I'm fine. Thank you. All right. Thank you. Thank you both. That concludes arguments in this case.